**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

ERIN ALEXANDER and HAILEY WORTHY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TRADER JOE'S COMPANY,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

Plaintiffs Erin Alexander and Hailey Worthy (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following class action complaint (the "Action") against Defendant Trader Joe's Company ("Defendant"), for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of their counsel as follows:

## INTRODUCTION

1. This is a class action on behalf of consumers who purchased Defendant's No Sugar Added Dark Chocolate Chips marketed as containing zero added sugar (collectively, the "Product").

2. Plaintiffs and class members, who have purchased the Product, bring this Action because of material representations which are false and misleading. Defendant markets and advertises the Product as having "No Sugar Added" (hereinafter, the "Representations").

However, unbeknownst to reasonable consumers, the Product does in fact contain sugar in the form of allulose. Allulose is a monosaccharide and, therefore, a sugar under the applicable federal and Illinois labeling standards.

3. Defendant's own labeling admits the Product contains allulose, a sugar. "Sugars" are defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii). The Product, therefore, cannot be classified as "No Sugar Added" as claimed on the Product's packaging and advertising.

4. Defendant made its Representations about "No Sugar Added" to its Product in order to induce health-conscious consumers, like Plaintiffs, to purchase the Product. But these representations are categorically misleading and false.

5. For as long as consumable goods have been sold, "health-washing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy a product that either does not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits. To compound matters, the misrepresentations made on the Product are not only potentially harmful but command a price premium consistent with these misrepresentations that Plaintiffs and class members would not have paid had they known that Defendant's representations are false and misleading. The Product also intentionally contains no warning whatsoever about potential risks and the tendency to cause health risks.

6. Against this backdrop, Plaintiffs and the class members, on behalf of themselves and all others similarly situated, bring this Action seeking actual damages, statutory damages, restitution, pre and post-judgment interest, and reasonable costs and attorneys' fees under state

statutes and common law doctrines due to Defendant's intentional failure to ensure that the Product was distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiffs and class members (defined below) were harmed by paying a price premium for the Product which they otherwise would not have paid due to the misrepresentations made on packaging and in advertising or would not have purchased the Product at all.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

8. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

9. Defendant routinely conducts business in the State where this district is located, has sufficient minimum contacts in this State, and has intentionally availed itself of this jurisdiction by marketing and selling the Product, and by accepting and processing payments for the Product within this State. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of Illinois.

10. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiffs' claims occurred within this District, and Defendant does business in this Judicial District. Plaintiffs also reside in this District.

## THE PARTIES

*Plaintiff Erin Alexander*

11. Plaintiff Erin Alexander is a citizen of Crete, Illinois.

12. Plaintiff Alexander purchased the Product from a Trader Joe's store in Orlando Park, Illinois in July 2024. Prior to making her purchase, Plaintiff Alexander saw and relied on Defendant's representations that the Product had "No Sugar Added."

*Plaintiff Hailey Worthy*

13. Plaintiff Hailey Worthy is a citizen of Poplar Grove, Illinois.

14. Plaintiff Worthy purchased the Product from a Trader Joe's store in Algonquin, Illinois in March 2026. Prior to making her purchase, Plaintiff Worthy saw and relied on Defendant's representations that the Product had "No Sugar Added."

15. Accordingly, these representations were part of the basis of Plaintiffs' bargain, in that Plaintiffs would not have purchased the Product on the same terms had they known that the representations were untrue. Furthermore, in making their purchases, Plaintiffs paid a price premium due to Defendant's false and misleading Representations. Plaintiffs, however, did not receive the benefit of the bargain because the Product was not, in fact, a zero sugar Product. Instead, it was sweetened predominantly with allulose, a sugar. Had Plaintiffs known that Defendant's representations were false and misleading, they would not have purchased the Product or would have paid substantially less for it. Plaintiffs purchased the Product for personal use during the class period. Plaintiffs bought the Product because they relied on Defendant's representations including that the Product contained zero sugars. The Product is sold at a price premium and is more expensive than other snacks. Plaintiffs relied on these misrepresentations—and had they known the truth, they would not have purchased the Product

or would have paid significantly less for the Product.

16. Plaintiffs remain interested in purchasing snacks and other products that truly have zero added sugar. However, they cannot know for certain whether the false labeling and marketing of the Product have been or will be corrected, and the Product's composition may change over time. If Defendant continues to make the Representations, Plaintiffs will be unable to make informed purchasing decisions and are likely to be misled again unless Defendant is required to ensure that the Product's marketing is accurate. Plaintiffs are average consumers who are not sophisticated in the chemistry, manufacturing, or formulation of food and beverage Product. Neither Plaintiffs nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

*Defendant Trader Joe's Company*

17. Defendant Trader Joe's Company is a California corporation with its principal place of business in Monrovia, California. Defendant manufactures, formulates, labels, advertises, markets, distributes, and/or sells the Product in Illinois and throughout the United States.

18. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Product. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of Illinois.

## FACTUAL BACKGROUND

### Consumers Seek Out and Pay More for Products That Contain No Added Sugars

19. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right

amount of added sugar" is "[a]s little as possible."[1] Sugar-sweetened desserts and sweet snacks compose 19% of added sugar for Americans.[2]

20. For decades, federal health authorities have recommended limiting added sugar intake.[3] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[4]

21. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free," "zero sugar," and "no added sugar" command higher prices than comparable Product that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

22. Defendant has capitalized on that demand. It markets Product whose predominant ingredient is allulose, a sugar, while labeling and advertising them as "No Sugar Added." Defendant thereby obtained an unfair competitive advantage over competitors whose zero-sugar claims are true, at the expense of unwitting consumers.

**<u>Defendant's False and Misleading Representations</u>**

---

[1] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[2] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56

[3] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; .S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/

[4] *See Int'l Food Info. Council*, 2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners 5, 9 (Dec. 2025) (reporting that 75% of surveyed Americans were trying to limit or avoid sugar), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf; ADM, ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar), https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide.

23. Defendant manufactures, markets, and sells No Sugar Added Dark Chocolate Chips. The Product is sold in eight (8) ounce packs at Defendant's stores throughout Illinois and the United States. As depicted in the screenshots below, Defendant represents on its website that the Product contains "sugar-free allulose" and is "an excellent option for bakers of all experience levels—***especially those looking to limit their sugar intake***." (emphasis added).

24. Below are illustrative samplings of the Product and the Representations:









25. The "No Sugar Added" claim is one of the key design elements of the Product, with a place just below the Product's name. Defendant disseminated the Representations

through the Product's labels and its official product pages, Defendant authored, created, supplied, authorized, approved, adopted, and disseminated the materially uniform front-label images.

26. Defendant's own ingredient statements, however, disclose that Defendant's Product contains allulose— a sugar.

27. Moreover, the Product's nutritional information panels reinforce Defendant's misleading Representations. The Nutritional Facts panels declare zero (0) grams of Total Sugars, including zero (0) grams of Added Sugars. Nowhere is it stated that allulose is a sugar, nor how much allulose the Product contains.

28. The Representations communicate to reasonable consumers that the Product contains no sugar. That is the plain and ordinary meaning of zero grams of total sugars, coupled with the "No Sugar Added" front-label statement. Federal and Illinois law prescribe an objective standard governing when those terms may be used. A consumer who looks at the front-label Representations is confirmed in their misled belief by the nutritional facts panels.

29. Defendant has made the Representations continuously.

30. The Representations are absolute, objective, and quantitative claims concerning a measurable physical attribute of the Product. Federal law permits that claim only when a product contains less than 0.5 grams of sugar per reference amount customarily consumed and per labeled serving, together with the regulation's other requirements. The Product's "0g" Nutrition Facts declarations further reinforce the no-sugar message to consumers, making it impossible for consumers to discover that the Product does, in fact, contain sugar.

**Allulose Is a Sugar**

31. As a monosaccharide, allulose falls squarely within the Food and Drug

Administration ("FDA")'s codified definition of sugar. 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[5] No such rulemaking ever occurred.

32. In *Franco v. Chobani, LLC*, the Seventh Circuit recently confirmed that allulose is a sugar under federal labeling regulations. No. 25-2087, 2026 WL 2150193 (7th Cir. July 27, 2026). The court explained that 21 C.F.R. § 101.9(c)(6)(ii) defines "Total Sugars" as the sum of all free mono- and disaccharides and, because allulose is undisputedly a monosaccharide, it falls squarely within that definition. Accordingly, under the governing federal regulations, allulose is a sugar.

33. The industry also recognizes that allulose is a sugar. Indeed, one of the most predominant manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[6] and has noted in multiple FDA filings that "[a]llulose is a monosaccharide and is classified as a sugar."[7] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[8]

34. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[9] A large clinical trial on the

---

[5] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

[6] *Tate & Lyle Study*, Aug. 13, 2018, at p. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

[7] Citizen Petition Submitted by Tate & Lyle Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages, April 10, 2015, Docket Number FDA-2015-P-1201.

[8] *See, e.g.*, *Cleveland Clinic, What You Need To Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[9] *Memorandum from Center for Science in the Public Interest to Food and Drug Administration* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf

gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[10]

35. The Product violates the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

36. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). By contrast, Defendant's Representations expressly characterize the level of sugar in the Product and are nutrient-content claims governed by 21 C.F.R. §§ 101.13(b) and 101.60(c)(2).

37. The Representations on the Product's packaging and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

38. Nutrient-content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the

[10] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients, 2018 Dec 19;10(12):2010, doi: 10.3390/nu10122010.

level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D...").

39. Within Subpart D, section 101.60(c)(1)(i)-(ii) specifically governs the use of the "zero sugar" nutrient content claims at issue in this case. That regulation provides that terms such as "sugar free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," and "trivial source of sugar" may not be used on the label or in labeling of a food unless, among other requirements:

> (i) The food contains less than 0.5 g of sugars, as defined in §101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving...; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

40. These quoted requirements are conjunctive; each must be satisfied.

41. The Product does not comply with these regulations. To determine the amount of sugar in a food, section 101.60(c)(1)(i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of

fructose, falls squarely within that definition. The allulose in the Product must, therefore, be included when calculating the amount of sugars for purposes of the 0.5-gram threshold in section 101.60(c)(1)(i).

42. By Defendant's own admission on the Product's label and on marketing material, allulose is the second ingredient present in the Product. The Products' Nutrition Facts panel declares sixteen (16) grams of total carbohydrate, two (2) grams of dietary fiber, and zero (0) grams of total sugars, including zero (0) grams of added sugars, per thirty (30) gram serving. Cocoa butter contains no carbohydrate, and the unsweetened chocolate needed to supply the declared protein, fiber, and fat contributes roughly five (5) grams. Thus, upon information and belief, the remaining carbohydrate—approximately 10 to 12 grams per serving, or roughly one-third of the Products by weight—is allulose.

43. The average consumer who noticed allulose on the ingredient list would be led to believe it was not a sugar, based on the Defendant's repeated "No Sugar Added" Representations.

44. Because the Product's label includes deceptive and impermissible nutrient-content claims, the Product is "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), and (c), and 101.60(a)(1), (c)(2). Misbranded food may not be lawfully introduced or delivered for introduction into interstate commerce. 21 U.S.C. § 331(a).

45. Plaintiffs do not seek to enforce the FDCA directly. They seek relief under independently enforceable state consumer-protection laws, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. The federal provisions cited herein are alleged because they supply the content of the food-labeling standards Illinois

has adopted and the conduct that renders the Product misbranded under Illinois law. 410 ILCS 620/9.

**Defendant's Conduct Violates Illinois's Food Labeling Laws**

46. The Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq., prohibits the misbranding of food sold in Illinois. Under 410 ILCS 620/11(a), "[a] food is misbranded" if "its labeling is false or misleading in any particular."

47. In determining whether labeling or advertising is misleading, Illinois law requires consideration of "not only representations made or suggested by statement, word, design, device, sound or any combination thereof," but also whether the labeling or advertising fails to disclose material facts in light of the representations made. 410 ILCS 620/2.11.

48. The IFDCA also incorporates applicable federal food-labeling regulations into Illinois law. *See* 410 ILCS 620/21(j) ("[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation."). Federal regulations provide that "sugars" include "all free mono- and disaccharides." 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a monosaccharide and therefore constitutes a sugar under this regulatory definition.

49. Federal regulations further prohibit the use of the terms "sugar free," "zero sugar," "no sugar," or other terms having the same meaning unless the food contains less than 0.5 grams of sugars per reference amount customarily consumed and per labeled serving. 21 C.F.R. § 101.60(c)(1).

50. Defendant prominently represents on the Product's labeling and packaging that the Product contains "No Sugar Added." Those representations are false and misleading because the Product contains allulose. 21 C.F.R. § 101.60(c)(1). The Product's labeling therefore

misrepresents the nature and sugar content of the Product and fails to disclose material facts necessary to prevent Defendant's "No Sugar Added" representations from misleading consumers. *See* 410 ILCS 620/2.11.

51. Moreover, Defendant's marketing, advertising, distribution, and sale of the Product violate the misbranding provisions of Illinois's Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq. An "advertisement" includes the attempt by publication, dissemination, solicitation, or circulation to induce directly or indirectly any person to acquire merchandise. Defendant's Representations fall into this definition, which induced and misled Plaintiffs and other class members to purchase the Product on account of its purported lack of sugar content.

52. The ICFA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. These include deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2. Defendant's Representations ("No Sugar Added") in front-label images disseminated both physically and online fall squarely within that definition.

53. Because the Product bears a "No Sugar Added" nutrient content claim while containing allulose, an added sugar, the Product is misbranded and falsely advertised under Illinois law.

**Reasonable Consumers Would Be Misled By Defendant's Deception.**

54. Reasonable consumers have no reason to look at the back label of the Product when presented with the conspicuous representation (on the front of the package and on

marketing materials) that the Product has "No Added Sugar." Consumers are not expected to look beyond misleading representations on the front of the package to discover that those representations are false.

55. Defendant's deception is especially misleading because a consumer who reviews the Nutrition Facts table would encounter 0g Total Sugars and 0g Added Sugars disclosures, even though the Product's second ingredient is allulose (a free monosaccharide sugar).

56. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

57. Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Product. Specifically, Defendant knew that: (a) the Product contains allulose; (b) allulose is a sugar; (c) its labels represented that the Product contained zero sugar; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendant to charge a premium for products containing no sugar.

58. Defendant, as the marketer and distributor of the Product, controlled, or participated in, making the Representations on the Product's labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge that consumers reasonably rely on Representations, Defendant chose to continue

using them, thereby causing consumers to buy or overpay for the Product.

**Defendant's "No Sugar Added" Claims Injured Plaintiffs and the Class**

59. Defendant concealed or failed to disclose material facts about the Product, including: (a) the true nature of the Product's ingredients; (b) the fact that a predominant ingredient is a sugar; (c) the fact that each serving contains a significant amount of allulose; (d) the fact that the Product is neither zero added sugar nor zero sugar; and (e) the fact that the Product is misbranded under federal and Illinois law when sold bearing the Representations.

60. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the class members in that they: (a) paid money for Product that were not as represented; (b) paid a premium price for Product that were not as represented; (c) were deprived of the benefit of the bargain because the Product they purchased differed from what Defendant warranted; (d) purchased Product worth less than represented; (e) did not receive Product that met the expectations Defendant created; (f) purchased Product that Plaintiffs and members of the Classes did not expect or consent to receive; (g) purchased Product containing sugar despite intending to buy only Product represented to contain none; and (h) with respect to Plaintiffs and members of the Illinois Subclass (as defined below), purchased misbranded Product that could not lawfully have been sold in Illinois.

61. Accordingly, Plaintiffs and the class members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**Plaintiffs Lack an Adequate Remedy at Law**

62. Plaintiffs lack an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiffs' inability to rely on Defendant's Representations when

deciding whether to purchase the Product in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Representations can address that prospective harm.

63. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiffs and class members paid and the value of the Product as received, and disgorgement of revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

64. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary.

## CLASS ACTION ALLEGATIONS

65. Plaintiffs bring this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class(es):

> **Illinois Subclass:** All persons in Illinois who, during the maximum period of time permitted by law, purchased Defendant's Product for their personal use.
>
> **Multi-State Consumer Protection Class**: All persons in the States of Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who, during the maximum period of time permitted by law, purchased Defendant's Product for their personal use ("Multi-State Class" and jointly with Illinois Class, the "Class Members" or "Members of the Class").

66. Excluded from the Members of the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely

election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

67. Plaintiffs reserve the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

68. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

69. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the Members of the Class are so numerous that joinder of all members is impractical, if not impossible. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

70. Commonality: Plaintiffs and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether allulose is a sugar;

b. Whether the Product satisfies the conditions governing a "zero sugar" claim under 21 C.F.R. §§ 101.9(c)(6)(ii) and 101.60(c)(1);

c. Whether reasonable consumers would understand Defendant's Representations and warranties concerning the Product to be untrue and

misleading;

d. Whether Defendant's representations and warranties were material;

e. Whether the Product is misbranded under federal law and, with respect to the Illinois Subclass, Illinois law;

f. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiffs and the Members of the Class have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Plaintiffs and the Members of the Class are entitled to statutory damages; and

i. Whether Plaintiffs and the Members of the Class are entitled to attorneys' fees and costs.

71. Typicality: Plaintiffs' claims are typical of the claims of the Members of the Class. Plaintiffs and all Members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

72. Adequacy of Representation: Plaintiffs in this class action are an adequate representative of the Members of the Class in that Plaintiffs have the same interest in the litigation of this case as the Members of the Class, are committed to the vigorous prosecution of this case, and have retained competent counsel who are experienced in conducting litigation of this nature.

73. Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Members of the Class or the class in its entirety. Plaintiffs anticipate no management difficulties in this litigation.

74. Superiority of Class Action: Since the damages suffered by individual Members of the Class, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for Members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual Member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

75. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests to the Members of the Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

76. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Members of the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Members of the Class and making final injunctive relief appropriate with respect to the Class in its entirety.

77. Defendant's policies and practices challenged herein apply to and affect the Members of the Class uniformly and Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiffs.

78. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

79. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the

Members of the Class as a whole is appropriate under Federal Rule of Civil Procedure Rule 23.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
### (On behalf of Plaintiffs and the Multi-State Consumer Protection Class[11])

80. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

81. Plaintiffs bring this Count on behalf of themselves and the Multi-State Class against Defendant.

82. The Consumer Fraud Acts of the States in the Multi-State Class prohibit unfair or deceptive business practices in trade or commerce. The specific laws at issue are:

a. Illinois (815 ILCS 505/1, et seq.);

b. Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.);

c. Michigan (Mich. Comp. Laws § 445.901, et seq.);

d. Minnesota (Minn. Stat. § 325F.67, et seq.);

e. Missouri (Mo. Rev. Stat. § 407.010, et seq.);

f. New Jersey (N.J. Stat. § 56:8-1, et seq.);

g. New York (N.Y. Gen. Bus. Law §§ 349 and 350); and

h. Washington (Wash. Rev. Code § 19.86.010, et seq.)

83. These statutes are materially similar and prohibit deceptive or unfair conduct in the course of business.

84. Defendant's uniform labeling and marketing Representations of the Product were deceptive and materially misleading.

---

[11] Plaintiffs reserve the right to amend this list of states after discovery.

85. Given Defendant's leading position in consumer products and its growing popularity as an established and trustworthy national brand, Plaintiffs and reasonable consumers trusted and relied on Defendant's Representations, sustaining damages in an amount to be proven at trial.

86. In addition, Defendant's conduct showed malice, motive, and/or reckless disregard for the truth, so an award of punitive damages is appropriate.

87. Plaintiffs and the other Members of the Multi-State Class have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in the Multi-State Consumer Protection Class because Plaintiffs and members of the Multi-State Class have suffered an injury in fact and lost money because of Defendant's actions set forth herein.

## COUNT II
## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 § 505/1 ET SEQ. ("ICFA")
## (On Behalf of Plaintiffs and the Illinois Subclass)

88. Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

89. Plaintiffs bring this claim on behalf of themselves and the Illinois Subclass against Defendant.

90. Plaintiffs and other Illinois Class members are persons within the context of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1(c).

91. Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

92. Plaintiffs and the proposed Illinois Subclass are "consumers" who purchased the Product for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

93. In its sale of the Product throughout the State of Illinois, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of the ICFA, 815 § 505/2.

94. The ICFA, 815 ILCS 505/2, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

95. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

96. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the Product's front labels that the Product contained zero sugar. Those representations are false or misleading because Defendant adds allulose—a sugar—to the Product during processing. The Product does not conform to Defendant's Representations.

97. The foregoing deceptive acts and practices were directed at consumers.

98. The foregoing deceptive acts and practices are misleading in a material way because they misrepresent the nature, composition, sugar content, quality, and value of the Product.

99. As a result of Defendant's deceptive practices, the Illinois Subclass members suffered an economic injury because they would not have purchased the Product, or would have paid less for it, had they known that Defendant adds a sugar to the Product and did not conform to the zero sugar Representations.

100. On behalf of themselves and the Illinois Subclass members, Plaintiffs seek to recover actual economic damages, and reasonable attorneys' fees and costs, as provided under ILCS 815 505/10a. Plaintiffs and the Illinois Subclass are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Illinois Subclass)**

101. Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

102. Plaintiffs bring this claim individually and on behalf of the Illinois Subclass against Defendant.

103. To the extent required, Plaintiffs and the Illinois Subclass assert this cause of action in the alternative to their legal claims, as permitted by Federal Rule of Civil Procedure 8.

104. Plaintiffs and the Illinois Subclass members conferred a benefit on Defendant in the form of revenues Defendant derived from their purchases of the Product.

105. Defendant knew of the benefit Plaintiffs and the Illinois Subclass conferred on it.

106. Defendant has been unjustly enriched by retaining revenues from Plaintiffs' and Illinois Subclass' purchases. That retention is unjust because Defendant misrepresented that the Product had "No Sugar Added," causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

107. Defendant accepted and retained the benefit of revenues derived from sales of the Product to Plaintiffs and Illinois Subclass.

108. Defendant has thereby profited under circumstances that make it unjust for Defendant to retain the benefit.

109. Plaintiffs and Illinois Subclass are therefore entitled to restitution in the form of

revenues derived from Defendant's sale of the Product.

110. As a direct and proximate result of Defendant's actions, Plaintiffs and the Illinois Subclass have suffered damages in an amount to be proven at trial.

111. Plaintiffs and the Illinois Subclass have suffered injury in fact and lost money as a result of Defendant's conduct.

112. Plaintiffs and the Illinois Subclass lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

113. Legal remedies available to Plaintiffs and the Illinois Subclass are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs have failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

114. Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their respective purchases of the Product is determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiffs and the Illinois Subclass would be left without the parity in purchasing

power to which they are entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and each member of the proposed Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under Federal Rule of Civil Procedure 23, including the appointment of Plaintiffs' counsel as Class Counsel;

2. For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

3. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

4. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under causes of action that permit such relief;

5. For prejudgment interest on all amounts awarded;

6. For an order of restitution and all other forms of equitable monetary relief;

7. For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling, marketing, and selling the Product with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct; and

8. For an order awarding Plaintiffs' and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

**JURY DEMAND**

Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury for all issues triable by jury.

Dated: September 16, 2026

Respectfully submitted,

By: */s/Kevin Laukaitis*

**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215)-559-6072
klaukaitis@laukaitislaw.com

Attorney for Plaintiffs and the Class